Good morning, Your Honours. May it please the Court, my name is Maria Christina Flores and I'm here on behalf of the petitioner, Mr. Jinglong Liu. This involves a claim for asylum which is two-pronged, one involving the coercive birth policy in China and the other is concerning a work-related dispute. I believe that the primary issue that we're here to contemplate is whether the Board was justified in making an adverse credibility determination. Can you speak up a little bit, please, Counsel? Yes. I believe the primary reason or issue before the Court this morning is to determine whether or not the adverse credibility determination made by, was justified. Our position is that it was not, that it was primarily based upon a number of factors concerning speculation and conjecture on the part of the IJ. Well, let's take two of them. The first one, the family planning issue, I thought your client specifically stated that there was really no problem that some guards there, but after that, didn't he disclaim any long-term impact from that experience? Well, I believe the questions concerning whether he personally feared any harm by the family planning authorities was directed to him. There was the ongoing issue of the wife being forced to wear a second IUD, which was installed on the same day as the coerced abortion, and that continued until at least the time of the merits hearing, which was in March of 2013. It's unclear from the record whether that continued to be with her. So how do you explain the fact that in his asylum application, even though he claimed that he had various police visits, including one just, I think, a month before he filed the, or a month after he left China, he doesn't say a word about that? About the family planning? About the, my understanding is that the credibility, the adverse credibility finding was based, among other things, on his statements regarding his claim of persecution based on his alleged whistleblower activities, yes? Correct. And he testified that after he left China, the police returned to his home every few months and threatened his wife with arrest. But he didn't say one word about that in his asylum application, even though it would seem to be directly in point. So why doesn't that support, at least in part, the adverse inference drawn, the credibility adverse inference drawn by the administrative judge? Yes, I do agree that that is something that should have been addressed in the asylum statement. Oftentimes they, once they've committed to a certain statement and it's been submitted, they're reluctant to add to it, and they think that during their asylum interview they can amend. And I believe he did address that at his asylum interview. Well, what he said was, quote, maybe I have not thought completely about the whole thing. I'm not quite sure what that means, but in any event, the administrative law judge didn't have to accept that and could have said, no, you're just making this up. Understood. Moreover, wasn't there some testimony that your client really just wanted to come to the United States for a business opportunity that he thought was there? He had no trouble getting permission to leave the country, meaning China. How does that factor into the credibility determination? Well, I believe with respect to the two visa applications in 2005, this was before the work-related incident, he did testify that those were submitted by an agent. He was going to be coming to purchase some materials for a railway company, and due to his expertise in that area that he was not personally involved in the application. There's no evidence on the record that he was aware of the asylum policy being available at that time. But I guess I think at least Judge Rakoff and I are struggling with the same thing. Your client has the burden of proof, right? Certainly. And what you've got here is two different allegations, one with respect to what happened with his wife with the family planning and the second with respect to the whistleblowing. And at least as I look at the record, I really don't see where your client was persecuted. Where does it show up? Or at least there is a conflict in the testimony which would allow the administrative law judge to find that he was not credible. Where am I missing something? Well, I believe the brunt of the persecution was with regard to the family planning claim. When he arrived at the family planning office, he made attempts physically to protect his wife from being taken away to the hospital. And we get that. We know that he claims that he was assaulted and so on. That was when? Excuse me, 1992? That was 1993, nearly 20 years prior to the merits hearing. So I don't believe it would be unusual that he would have some confusion or some inability to recall specifically how many times he was struck. His memory may fade given the time, but so does the likelihood of his being persecuted if he goes back. Yes. Additionally, there was some testimony that they each wanted to have additional children, and the wife was forced to wear another IUD up to the time of the trial at least, and they were deprived of that opportunity to have an additional child. We, of course, have heard many, many, many, many of these cases. They've changed their policy now, but the reality is here the issue is your client and whether he was persecuted. And as you yourself point out, this happened a long, long time ago. And with respect to the business opportunity and the whistleblowing and so on, it's just hard to see where he personally suffered anything. It seems like he's kind of manufacturing it. At least that's what the ALJ said. And since your client bears the burden of proof, doesn't he lose in that situation? In other words, what compels a different result? Well, I think the case law that suggests that if the other party, the one that's not being subjected to an abortion or to sterilization, is able to demonstrate that he otherwise resisted, he provided other resistance, that he is then entitled to the presumption that there is past persecution because the form of the harm, the abortion, is something that's permanent and ongoing. Well, let's say you're right. I don't agree with you. Just say you're right. Then there is a presumption going forward, but he still has to show the current likelihood of persecution. And I don't think there's been any showing, has there, that he is currently persecuted or would be persecuted if he were to go back. I don't know that there is a need to if there is a presumption. There is a presumption, but it can be rebutted, and the government claims it's done that, but he has to bear a burden still. It's not an automatic, even if you assume, even if you're correct, that he had suffered, in quotes, past persecution. I think the fact that they have been permanently deprived of having any additional children because of their passage of time, their age, that that is a permanent, ongoing harm that cannot be. It's irreparable. Okay. Do you want to save any of your time? Counsel, it's up to you, but it's up to you. Yes. Thank you. We'll hear from the government. Good morning. May it please the Court, Brendan Hogan for the government. In the present case, the review petition should be denied because substantial evidence supports the agency's adverse credibility determination. As you've already heard, there were two claims in this case, one a family planning claim from 1993 and, second, a whistleblowing claim from 2011 when the petitioner was an employee for a state-run business. With regards to the family planning claim, the agency identified several reasons why the petitioner was incredible. First and foremost, he stated that he was not aware that his wife was pregnant until he showed up at the family planning office that day. But when it was pointed out to him that they were told she was three months pregnant on that day, wouldn't he be aware that she had not been menstruating for several months? He admitted, well, yeah, excuse me, yes, we were aware, but we thought maybe because she was wearing an IUD, she might not be pregnant, and that's an inconsistency, Your Honors. Again, the judge also found it implausible that even though the family planning officials thought it was of the utmost urgency that the wife have an abortion immediately, they would allow him 30 minutes to arrive from work if they were going to do it anyway, and their wishes were irrelevant. Next, there was the demeanor finding where the immigration judge said that it just seemed that he was making it up when he was talking about being punched and kicked. And as this Court has said, an immigration judge doesn't have to have a running commentary during the hearing, but as long as he identifies reasons for a demeanor finding in his decision, it's supported by substantial evidence. And turning to the 2011 whistleblowing claim, he claimed that basically he was blacklisted and fired and that he couldn't find another job because the government was angry with him for reporting on defective products. But then he turns around and provides a certificate from the government, and when he was asked, well, why did you get that, he stated that his wife asked for it so that he could find further employment, and that's simply implausible, Your Honor, that they would fire him as retaliation but then give him a certificate of employment to help him find a future job. And as you've already heard, he admitted that he was aware at the time that he filed his June 2012 asylum application that his wife was being harassed and threatened by the police, and he gave no reason why he didn't include that with the application, and that's a material omission. And finally, it's simply implausible that if he was under surveillance by the Chinese police for several months and had to report to them periodically, he could not leave his municipality or neighborhood, that he would be able to get on a train, travel across China, go to the consulate in Beijing, obtain a visa, and then depart China using his own passport after going through Chinese customs. You're saying that there really is nothing there to show that he was persecuted, that he was actually persecuted or that he would face persecution when he goes back, is it? Well, the board didn't reach the actual issue of persecution. They relied solely on credibility. But even, yeah, nothing in the record. The statute says that resistance shall be deemed to have a well-founded fear of persecution. So that seems to turn on the, even though it was a long time ago, and that turns on the credibility. Yes, Your Honor, because he wasn't found credible, he can't show other resistance because the agency did not believe that he was actually accosted on that day in 1993. Does the panel have any further questions? I think not, Counselor. Counselor, you have a little rebuttal time. Yes, I would just like to focus on two factors. One is the fact that such a long period of time has elapsed or had elapsed from the date of the merits hearing, and it would not be unusual. I mean, it's just human nature to forget details. But he was clear, though, on what happened to his wife. He was not so clear as to how many times he was beaten, but it is clear that the egregious nature of the harm to the wife and also the husband. I mean, the husband suffered a lot. I don't think he forgot about the incident. I believe he was being asked, how many times were you beaten? We went through this a little bit before, but he gave somewhat inconsistent responses. You're saying, oh, well, no one's memory is perfect and it was a long time ago, but would it not be reasonable to make that determination? It is within the bounds to make that determination. However, I believe that overall, considering the testimony and also the attempts to obtain corroborative evidence in the form of an abortion certificate that was given, attempted to be handed to the wife at the hospital. However, it was intervened, intercepted by the family planning authorities, and she did make attempts after that to obtain additional evidence, and because of the lapse of time, it was unavailable. Thank you, counsel, for your argument. Thanks to both counsel. The case just argued is submitted.
judges: Schroeder, M. Smith, Rakoff